## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KENNETH E. WADDELL,

      Petitioner,

      v.

STATE OF KANSAS,

      Respondent.

Case No. 5:21-cv-03039-HLT

## <u>ORDER</u>

Petitioner Kenneth Waddell is a prisoner in the custody of the State of Kansas and brings this petition for federal habeas corpus relief under 28 U.S.C. § 2254.[1] Doc. 1. Waddell seeks relief on the grounds that: (1) the trial court erroneously admitted a video interview of the victim; (2) the trial court failed to give a unanimity instruction; (3) the trial court erred in giving the presumption of intent instruction in violation of K.S.A. 60-415; (4) the trial court gave a misleading reasonable doubt instruction; (5) there was insufficient evidence of a second rape; (6) he received ineffective assistance of counsel; and (7) the district court erred in denying Waddell's K.S.A. 60-1507 petition. Because the stated grounds are procedurally defaulted or not meritorious, the Court denies Waddell's petition and declines to issue a certificate of appealability.

## I.  BACKGROUND

This case has a complex history that involves two trials and multiple appeals. The Court summarizes it below to provide context for this petition.

---

[1]  The Court is mindful of Waddell's pro se status and liberally construes his pleadings and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

A. **First Trial (Case No. 03-cr-184)**

The State originally charged Waddell in April 2003 with eight counts: two counts of rape in violation of K.S.A. 21-3502(a)(2), three counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A), one count of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(2), one count of aggravated indecent solicitation of a child in violation of K.S.A. 21-3511, and one count of criminal threat in violation of K.S.A. 21-3419. Doc. 14-1 at 51. All eight counts allegedly occurred between May 1, 2001, and February 25, 2003, and involved J.M.J., a young girl whose age ranged from 5 to 7 years old during this time.

The facts presented at the original trial, as summarized by the Kansas Court of Appeals ("KCOA") in *Waddell I*, are as follows:

> During the jury trial, Donna Mosby, J.M.J.'s grandmother, testified that J.M.J. came to live with her in March 2001, after residing in a foster home. Mosby lived next door to Waddell. J.M.J. played frequently in Waddell's yard and with his pets. She also occasionally went inside Waddell's trailer. Prior to February 2003, Mosby did not think anything was amiss with J.M.J. or Waddell.
>
> According to Mosby, Waddell once complained to her that J.M.J. walked into his house without knocking on the door. At the time, he was undressed and masturbating. Waddell said he was embarrassed. Mosby admonished J.M.J. to knock on the door before entering Waddell's home. Mosby testified she had seen J.M.J. and Waddell in the yard occasionally, but she never saw J.M.J. express any fear or concern about being around him.
>
> In February 2003, J.M.J. told Mosby, "I still want to play with the puppies, but Kenny touched me in my privates." J.M.J. made this statement after she had finished taking a bath. Mosby did not ask any questions, and J.M.J. never gave Mosby any details about what occurred. The only person Mosby told about J.M.J.'s statement was J.M.J.'s caseworker. Mosby only reported this, however, after the caseworker promised she would not remove J.M.J. from Mosby's home.
>
> After J.M.J. told Mosby about the touching, J.M.J. did not want to go outside because, according to Mosby, "She was afraid he might

be outside and know she told." J.M.J. did not want to even see Waddell's trailer, so Mosby covered up the windows on that side of her house. Prior to this disclosure, J.M.J. had never complained about Waddell and had expressed no reservations about going to his house.

Eileen Peoples, an elementary school counselor, testified she gives personal safety lessons on "good touch/bad touch" to her students. J.M.J. was a first grade student at Peoples' school in February 2003, and a day or two after these lessons, J.M.J. told Peoples she had received a bad touch from a neighbor named Kenny. Using a doll, J.M.J. pointed to the doll's bottom and front private area to show where the bad touch occurred. J.M.J. reported she had told her grandmother about the touching. She also related that "she couldn't see the puppies" if she told about the touching. Peoples immediately reported the matter to Social and Rehabilitation Services (SRS) on February 21, 2003.

Angela Buck, a special investigator for SRS and former police officer, conducted a videotaped interview with J.M.J. on February 25, 2003, at the Child Advocacy Center. The video camera, controlled from outside the room, was operated by Detective Proehl of the Lyon County Sheriff's Department. On two occasions during the taping, Buck left the interview room and consulted with Proehl. Buck testified the interview was designed to gather information, and the interview tape was forwarded to law enforcement officers.

The videotape of Buck's interview with J.M.J. was shown to the jury over the objection of Waddell's counsel. In the videotape, J.M.J. said her neighbor Kenny gave her a bad touch. J.M.J. stated that the first time Waddell touched her, it continued until she slapped him and pulled his hands off; then she ran to her grandmother's house. J.M.J. described an incident where Waddell had a knife in his hand and said he would kill her unless she stayed. In describing the sexual abuse, she said Waddell took their clothes off and touched her private parts with his hands. J.M.J. also generally described sexual intercourse, anal sex, the touching of her breast, and touching of Waddell's penis. J.M.J. drew circles on drawings of a girl and a man showing where she was touched. J.M.J. said several times that she screamed loudly. After the touchings, Waddell let J.M.J. get dressed and run home.

Later in the interview, J.M.J. said she had been outside playing with Waddell's dogs when he grabbed her and forced her inside the house to commit these acts. She screamed. He also grabbed her when she took over Girl Scout cookies. When asked whether Waddell touched

3

her with the knife in his hand, J.M.J. said, "No." At the conclusion of the interview, however, J.M.J. spontaneously said Waddell had two knives in one hand and held them to her face. J.M.J. said Waddell would kill her if she did not stay with him.

J.M.J. could not say how many times the sexual assaults happened, but agreed each time when Buck asked her if it was more than once, more than five times, and more than ten times. She was unable to specify, however, which days or times of the year the assaults had occurred.

J.M.J. also stated during the videotaped interview that Waddell showed her a picture of his naked daughter that was hanging on his bedroom wall. He did not show her any other pictures or movies. In describing Waddell's room, she said he had toy cars and trucks, and guns with bullets in them.

Pam Kvas, a sexual assault nurse examiner at an Emporia hospital, testified she examined J.M.J. on February 27, 2003. J.M.J. and Mosby told her there was sexual abuse sometime between the summer of 2002 and fall of 2002, and that it had occurred more than 10 times. J.M.J. told Kvas that she had been touched with a finger and a penis in her private, indicating the location on a picture.

Kvas used a specialized microscope to examine J.M.J.'s genital area and anus. Kvas testified there were no physical signs of any acute injury or past healed injury. She also testified these negative findings were not inconsistent with a claim of sexual abuse.

At trial, Detective Proehl confirmed that on February 25, 2003, he was told by Buck about J.M.J.'s allegations. Proehl acknowledged he had operated the video equipment during J.M.J.'s interview. Thereafter, he was involved in two searches of Waddell's residence. During these searches, police found knives and guns scattered throughout the house, and a nude photograph of a young woman hanging on the bedroom wall. Police found pornographic magazines, a television, guns, ammunition, and an adult video in the bedroom. Sex devices were found in the house during the second search. Hundreds of pornographic magazines were found in Waddell's house and in a nearby storage shed. The searches, however, yielded no biological material relevant to J.M.J.'s allegations.

Maria Diaz, J.M.J.'s daycare provider, testified that J.M.J. told her around February 2003 that she went to Waddell's trailer because he had puppies. J.M.J. told Diaz that Waddell forced her to enter his

trailer and showed her books with naked people. She also said that Waddell forced her to engage in acts consistent with oral sodomy, sexual intercourse, and sexual touching. According to J.M.J., Waddell put a knife to her forehead or throat and threatened to kill her if she told anyone or did not come back. J.M.J. told Diaz that she kept returning to Waddell's home and the sexual abuse continued, but she did not say how many times it occurred. J.M.J. told Diaz she continued to visit Waddell's home because he threatened to kill her if she did not return and because that was the only way she could see the puppies. Later, J.M.J. told Diaz the sexual abuse happened in Waddell's bedroom and he had a lot of dirty books. Immediately prior to J.M.J.'s disclosure, her grandmother told Diaz that "there's some shit going on with the neighbor that's come up."

The State also called Jolena Mauldin as a witness. Mauldin is a licensed clinical psychotherapist employed by a local mental health center. Mauldin testified about the reluctance of child sexual abuse victims to disclose their abuse and the difficulties young children have in tracking time. She also testified children may mix up events when they tell different people about them. Mauldin testified she had visited with J.M.J. on the Friday before trial and J.M.J. tried to avoid talking about the abuse. In a drawing, however, J.M.J. indicated she had been touched on the breast and vaginal areas.

The State's final witness was B.B., Waddell's adult daughter. B.B. testified that after her mother left the home in about 1971, (when B.B. was 3 years old) Waddell began to sexually abuse her and continued this abuse until she was 14 years old. B.B. left Waddell's home when she was 9 years old to live with her step-grandparents, but returned for visits. B.B. testified she told the Dunaways, her step-grandparents, of Waddell's abuse, however, her step-grandfather also sexually abused her.

B.B. testified that when she was 3 or 4 years old, Waddell had her take off her clothes and look through pornographic magazines, telling her they would be doing that someday. He would also pose her in suggestive positions. At about 4 years of age, Waddell had B.B. touch him in his private area. He would also penetrate her with his finger or tongue. Waddell began having sexual intercourse with B.B. when she was about 8 years old. Waddell told her she would be sent to an orphanage if she told their secret.

When B.B. turned 11, her father began taking nude pictures of her. Anytime she was alone with him, he would show her pornography. When B.B. was 14 years old, Missouri officials terminated Waddell's parental rights. At trial, B.B. identified a number of nude

pictures of herself she said Waddell took when she was 11 to 14 years of age.

The State also admitted Exhibit 66, which were records from the Juvenile Division of the Circuit Court of Carroll County, Missouri. The records memorialized that a child protective action was commenced regarding B.B. in 1981, when she was 12 years old. The petition alleged Waddell sexually abused her and forced her to engage in sexual acts with his girlfriends and male friends. After an August 1981, evidentiary hearing the court found "the allegations in the Petition have been established" and that B.B. was a dependent child.

At trial, several witnesses testified on behalf of Waddell. Hallie Dunaway, Waddell's former mother-in-law, testified that her daughter, Eva (B.B.'s stepmother), had custody of B.B. when Eva and Waddell separated. B.B. lived with the Dunaways from 1977 until 1988. Dunaway testified that B.B. reported when she was 9 or 10 years old that Waddell had improperly touched her, but gave no details. The Dunaways contacted SRS about the situation. After this time, Waddell visited the Dunaways' home, but he was never alone with B.B. Sometimes Eva took B.B. to Kansas City to visit Waddell's mother. Dunaway stated that B.B. was "quite capable of playing the victim image and not telling the truth."

Waddell testified on his own behalf. Waddell admitted his lifestyle in the mid to late 1970's was wild and involved a lot of alcohol and drugs. He admitted to nonforcible sexual activity with B.B. on about four occasions beginning when B.B. was about 7 years old. Shortly thereafter, B.B. went to the Dunaways. Waddell did not see B.B. frequently until about 1985 when B.B. was 17 years old. He admitted taking nude photographs of B.B. at this time, after B.B. volunteered to be a photography model.

Waddell testified that J.M.J. came into his house and he would let her go to the back of the trailer when she needed to use the bathroom. He stopped this practice when he found J.M.J. rummaging around the pornography in his room. He testified he did not keep pornography in the living room because his grandchildren might find it. J.M.J. started coming to his house as soon as she moved in with Mosby. Sometimes they watched TV together, and J.M.J. would also watch cartoons with his grandchildren. According to Waddell, J.M.J. often went to his house because Mosby's boyfriend was visiting. She frequently just walked into his house without knocking. One time, Waddell testified he was sleeping in the nude when he woke up to find J.M.J. in his bedroom. Another time, she

walked in when he was masturbating after an erotic dream. After this incident, Waddell began locking the door to his house all the time.

Waddell testified J.M.J. had been mad at him because he did not get her a Christmas present a few months earlier. J.M.J. told him he better get her a present because she knew how to get him in trouble. According to Waddell, J.M.J. also was upset because her pet turtle had died and Waddell refused to get her another one. J.M.J. told Waddell he would be sorry. Waddell denied ever touching J.M.J.'s breast or genitals or having her touch his penis.

*State v. Waddell (Waddell I)*, 2006 WL 1379576, at *1-5 (Kan. Ct. App. 2006).

On October 14, 2003, the jury convicted Waddell of all charges. The trial court sentenced Waddell to consecutive presumptive sentences totaling 330 months. Waddell timely appealed.

### B.      First Direct Appeal (*Waddell I*)

On appeal, Waddell raised the following issues:

1. The trial court erred by admitting a videotape of J.M.J. describing her allegations against Waddell because the videotape was inadmissible under K.S.A. 22-3433, which requires the child to be available to testify.

2. The trial court erred by admitting child hearsay evidence against Waddell, in violation of his 6th and 14th Amendment rights and state constitutional rights of confrontation of his accuser.

3. The trial court erred by admitting evidence of prior bad acts pursuant to K.S.A. 60-455 because the evidence was not relevant to prove any of the facts specified in the statute.

4. The trial court erred by failing to give a unanimity instruction on the charge of aggravated criminal sodomy.

5. The trial court erred by failing to order a psychological evaluation of the complaining witness.

6. The combination of errors in this case deprived Waddell of his right to a fair trial.

*See generally* Doc. 14-3 at 5.

On May 19, 2006, the KCOA held that: (1) admission of J.M.J.'s videotaped interview violated Waddell's Sixth Amendment right to confront witnesses; and (2) B.B.'s testimony was

not admissible under K.S.A. 60-455.[2] *Waddell I*, 2006 WL 1379576, at *8, 13. Accordingly, the KCOA reversed Waddell's convictions, vacated his sentences, and remanded the case for a new trial. *Id*. at *14.

### C.     Second Trial

The State retried Waddell on the same eight charges in 2008. The facts at the second trial were largely the same except that J.M.J. testified. The State offered into evidence the same videotape of J.M.J.'s statement. Waddell objected to its admission on the grounds that the State did not give him a transcript of the video, which Waddell argued violated K.S.A. 22-3433. That statute allows a recording of a child victim's statement to be admitted in evidence if certain requirements are met. One requirement is that "a copy of a written transcript is provided to the parties." K.S.A. 22–3433(a)(8). Waddell raised the same lack-of-transcript objection during the 2003 trial and appeal, but the KCOA did not rule on that issue because its constitutional ruling resolved the original appeal.

The trial court in the retrial again overruled Waddell's objection and reasoned that "under the circumstances and given the length of time that this videotape has been known, it would really serve no useful purpose to anyone at this point in time to have a written transcript made of the video." The jury again convicted Waddell of all eight charges, and the trial court sentenced him to 330 months in prison. Waddell timely appealed again.

### D.     Second Direct Appeal (*Waddell II & III*)

On his second direct appeal, Waddell raised the following issues:

1. The trial court erred in admitting evidence regarding Waddell's pornography collection.

---

[2]   The KCOA also held that the district court did not err in denying Waddell's motion to compel J.M.J. to undergo a psychological examination. The KCOA declined to address the remaining issues.

2. The trial court erred by not complying with the provisions of K.S.A. 22-3433 and, as a result, improperly admitted J.M.J.'s videotaped statement.

3. The trial court wrongly admitted general evidence about Waddell's pornography collection.

4. The trial court wrongly admitted a picture of Waddell's sex toys.

5. The trial court wrongly admitted general evidence about what detectives generally look for in cases of sexual abuse against children.

6. The cumulative effect of trial errors deprived Waddell of his right to a fair trial.

*See generally State v. Waddell (Waddell II)*, 2009 WL 3837634 (Kan. Ct. App. 2009).

The KCOA affirmed Waddell's convictions on November 13, 2009. The KCOA held that the trial court did not err in admitting evidence of Waddell's pornography collection or in admitting J.M.J.'s videotaped deposition (issues 1-2). The KCOA found that Waddell did not preserve issues 3-5 because he did not object to that evidence at trial. *Id*. at *6. The KCOA rejected issue 6 because there was no cumulative error. *Id*.

The Kansas Supreme Court ("KSC") granted review. While the petition for review was pending, the KSC ruled in another case that the failure to provide a written transcript as required by K.S.A. 22-3433 makes the videotape inadmissible and that substantial compliance with the statute (i.e., providing a copy of the videotape recording) is not enough. *State v. Martinez*, 290 Kan. 992, Syl. ¶ 5, 236 P.3d 481 (2010). The KSC thus remanded this case back to the KCOA for reconsideration in light of *Martinez*.

On remand, the KCOA allowed the parties some additional briefing. Waddell's brief limited his written-transcript argument to his convictions for aggravated criminal sodomy, aggravated indecent liberties (two counts), and criminal threat. *See* Doc. 14-6 at 3. On February 18, 2011, the KCOA held that the trial court committed reversible error by admitting the videotaped interview when the State had not given Waddell a copy of the written transcript and

that the error was not harmless. *State v. Waddell (Waddell III)*, 2011 WL 767836, at *3-6 (Kan. Ct. App. 2011). The KCOA thus reversed Waddell's convictions for the four challenged counts and vacated the sentences for those convictions. *Id*. at *6. But the KCOA noted that Waddell had not challenged his four other convictions, so those convictions remained in place and Waddell's overall 330-month sentence remained unaffected by the appeal.[3]

The KCOA remanded the case to the trial court. The State later moved to dismiss without prejudice the four charges reversed by the KCOA.  The trial court granted the motion and ordered Waddell to serve the remainder of his 330-month sentence on the four remaining counts that were not impacted by the appeal. Doc. 14-1 at 2407. Waddell did not appeal this ruling.

### E.    K.S.A. 60-1507 Petition (Case No. 12-cv-75)

#### 1.    Waddell's Pro Se Petition and Brief

Waddell then filed a pro se petition for post-conviction relief under K.S.A. 60-1507 in March 2012.[4] Doc. 14-2 at 31. Waddell's K.S.A. 60-1507 petition raised multiple issues including:

1. The trial court erred in failing to give a unanimity instruction.

2. Insufficient evidence of a second rape occurring on a different date than alleged in the first court of rape.

3. The trial court erred in giving the presumption of intent instruction in violation of K.S.A. 60-415.

4. The trial court gave a misleading reasonable doubt instruction which lowered the state's burden of proof.

---

[3]  Waddell received consecutive sentences totaling 662 months when sentenced for all eight convictions. But his overall sentence was limited under the double rule of K.S.A. 21–4720(b)(4) to no more than twice the base sentence, or 330 months, which is Waddell's controlling sentence. Considering only the four convictions that the KCOA affirmed, the trial court sentenced Waddell to consecutive sentences totaling 410 months (165 months each on counts I and II, 61 months on count III, and 19 months on count VII), which would still be reduced to 330 months, his present sentence, under the double rule. Because convictions sufficient to result in a 330-month sentence remained unaffected by this appeal, the KCOA did not vacate his controlling sentence.

[4]  Based on the record, it is not entirely clear exactly what date Waddell filed his petition. Waddell signed his petition, his forma pauperis affidavit, and another affidavit in support of his motion on March 19, 2012. But the petition was not file stamped by the district court clerk until March 30.

5.   Waddell received ineffective assistance of counsel by appellate counsel for failing to raise on appeal issues 1-4 (above).

6.   Waddell received ineffective assistance of counsel by trial counsel for failing to object to: (a) pictures of Waddell's sex toys, (b) general evidence that Waddell had an extensive pornography collection, (c) general evidence about what detectives look for in a case of sexual abuse against children, and (d) the district court's denial of a jury instruction that impeachment evidence of inconsistent statements could not be considered as substantive evidence of Waddell's guilt and failure to present testimony from his cellmate which would have reflected on the credibility of the victim.

7.   Waddell received ineffective assistance of counsel by trial counsel for failing to consult with an expert or present expert witness testimony concerning: (a) Waddell's physical ability to perform a sexual act, (b) the medical testimony of Kvas that there were no signs of sexual assault, and (c) the questioning of child witnesses.

*See generally* Doc. 14-2 at 39, 237. The district court denied his K.S.A. 60-1507 petition as untimely, and Waddell appealed.

## 2.   First Appeal of K.S.A. 60-1507 Petition (*Waddell IV*)

The KCOA agreed with Waddell and held that the record did not conclusively establish that Waddell filed his petition out of time. *Waddell v. State (Waddell IV)*, 2014 WL 3630218, at *6 (Kan. Ct. App. 2014). The KCOA therefore reversed and remanded to the district court with instructions to reinstate Waddell's K.S.A. 60-1507 petition. *Id*.

## 3.   District Court's Evidentiary Hearing and Ruling

The district court on remand appointed Waddell counsel. Doc. 14-2 at 131. The State then moved to summarily dismiss the petition. *Id*. at 136. The district court held a hearing and denied the State's motion. *Id.* at 185.

Waddell's counsel then filed a pretrial questionnaire for the evidentiary hearing on Waddell's petition. *Id*. at 236. The pretrial questionnaire listed Waddell's theories of recovery, which largely mirrored the issues raised in Waddell's pro se petition. But it raised an additional issue: trial counsel provided ineffective assistance by failing to obtain a final ruling from the

district court on a motion in limine filed by Waddell relating to the admission of erotic photographs and other items. *Id*. at 237.

On July 12, 2015, Waddell's counsel filed a motion to amend the pretrial questionnaire to allow the addition of an expert witness to testify about criminal defense procedures and the actions undertaken by Waddell's prior attorneys. *Id*. at 247. The district court granted the motion, and Waddell designated an expert witness. The State designated a rebuttal expert on May 27, 2016. *Id*. at 282.

The district court held an evidentiary hearing on May 31 and July 14, 2016. Waddell's expert testified at the hearing that he believed that some of the issues raised by Waddell were meritorious, but others were not. *Id*. at 327-48. He testified that issues 2-5 and 6(d) were legally without merit, but that the other issues were all valid. *Id*. The district court asked counsel to provide a summary of the parties' position on each of the issues raised by Waddell's petition when the hearing ended.

On July 29, 2016, Waddell's counsel filed a brief summarizing Waddell's position on the issues. *Id*. at 540. Waddell conceded that issues 2-5 and 6(d) did not merit consideration by the district court. But Waddell argued that there was sufficient evidence to establish constitutional error on the remaining issues. *Id*. at 540-45.

The district court denied Waddell's habeas petition on the merits on September 27, 2017. *Id*. at 550. The district court did not address issues raised by Waddell but deemed not to merit consideration by Waddell's counsel. The district court only addressed the two major issues remaining: (1) whether the trial court erred in failing to give a unanimity instruction; and (2) whether Waddell received ineffective assistance of counsel. *Id*. Finding no error on either issue, the district court denied the petition. Waddell timely appealed.

### 4.      Second Appeal of K.S.A. 60-1507 Petition (*Waddell V*)

On his second K.S.A. 60-1507 appeal, Waddell's counsel raised just one general issue: Did the district court err in denying Waddell's K.S.A. 60-1507 petition. Doc. 14-9 at 1. Waddell then specifically argued six instances of <u>trial</u> counsel's ineffective assistance:

1.   Trial counsel was constitutionally ineffective because he failed to object to introduction of sex-toy evidence.

2.   Trial counsel was constitutionally ineffective because he failed to object to references to Waddell's extensive pornography magazine collection.

3.   Trial counsel was constitutionally ineffective because he failed to object to Detective Proehl's testimony about how he conducts child sexual abuse cases.

4.   Trial counsel was constitutionally ineffective because he failed to consult with experts about Waddell's medical condition that allegedly prevented him from engaging in sexual intercourse.

5.   Trial counsel was constitutionally ineffective because he failed to consult with experts to rebut Kvas's medical testimony.

6.   Trial counsel was constitutionally ineffective because he failed to consult with experts about child interview techniques in cases of sexual assault and abuse.

Doc. 14-9 at 6-11. Waddell notably did not argue that the trial court erred in failing to give a unanimity instruction or that his trial counsel was ineffective for failing to object to the jury instruction. Waddell likewise did not argue that he received ineffective assistance of <u>appellate</u> counsel.

On May 15, 2020, the KCOA held that the district court was correct in determining that the failure to object in issues 1-3 was not deficient performance. *Waddell v. State (Waddell V)*, 2020 WL 2502200, at *6-10 (Kan. Ct. App. 2020). As for issues 4-6, the KCOA concluded that Waddell failed to meet his burden to show that trial counsel's performance was deficient.

Accordingly, the KCOA held that the district court did not err in denying his K.S.A. 60-1507 petition. Waddell did not timely seek review from the KSC.[5]

On February 9, 2021, Waddell filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his state-court convictions on multiple grounds. Doc. 1.[6] His petition is 74 pages. The record is over 3,400 pages, not including the briefs filed in *Waddell I-V*.

## II.   STANDARD

Waddell's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, a petitioner must timely bring a petition and must have exhausted his federal claims in state court. 28 U.S.C. §§ 2244(d)(1), 2254(b)(1)(A). Four aspects of the exhaustion requirement are relevant to this case.

First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Griffin v. Scnurr*, 640 F. App'x 710, 716 (10th Cir. 2016) (quotation omitted). In appeals from criminal convictions or post-conviction relief before July 1, 2018, the prisoner must have presented the very issues raised in his federal habeas petition to the KSC. *Jaghoori v. Langford*, 2021 WL 4819430, at *1 (D. Kan. 2021). In all appeals from criminal convictions or post-conviction relief on or after July 1, 2018, the prisoner must have presented a claim to the KCOA and the KCOA must have denied relief. KSC Rule 8.03B(a).

Second, the prisoner must "fairly present" his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim. *Id*. "The prisoner is not required to cite book

---

[5]   See Order, *Waddell v. State*, No. 120,800 (Kan. July 7, 2020), https://pittsreporting.kscourts.org/Appellate/CaseDetails?caseNumber=120800 (denying Waddell's motion for extension of time to file a petition for review).

[6]   This case was transferred to the undersigned in October 2021.

and verse on the federal constitution." *Griffin*, 640 F. App'x at 716. "The crucial inquiry is whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Id*. at 716-17 (quotations omitted).

Third, procedural default may arise from anticipatory procedural bar. "Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Id*. at 717. However, there is a procedural default for purposes of federal habeas review if the court to which the prisoner must present his claims to meet the exhaustion requirement would now find those claims procedurally barred. *Id*.

Fourth, the Court will not address issues that have been defaulted in state court on an independent and adequate state procedural ground unless the prisoner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Id*.

If the state court did not reach the merits of a federal claim and review is not barred by an adequate and independent state procedural disposition, the federal court reviews the claim on the merits. *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001). But if a state court denies a federal claim on the merits, the federal court may grant relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975.

## III.   ANALYSIS

Waddell identifies the following grounds for relief: (1) the trial court erroneously admitted a video interview of the victim; (2) the trial court failed to give a unanimity instruction; (3) the trial court erred in giving the presumption of intent instruction in violation of K.S.A. 60-415; (4)

the trial court gave a misleading reasonable doubt instruction; (5) there was insufficient evidence of a second rape; (6) he received ineffective assistance of counsel for multiple reasons; and (7) the district court erred in denying Waddell's K.S.A. 60-1507 petition. The Court analyzes each claim.

### A.   Waddell's claim that the trial court erred in admitting the video of J.M.J.'s interview with a special investigator is moot

Waddell first argues that the trial court in his second trial erred in admitting the video of J.M.J.'s interview with a special investigator. Waddell specifically argues that "K.S.A. 22-3433 requires the distribution of a written transcript to all parties prior to the admission of such a video." Doc. 1 at 12. Waddell raised this argument on direct appeal, and the KCOA agreed with him. The KCOA held that the trial court "erroneously admitted the videotaped interview of J.M.J. without the State having first given Waddell a written transcript of it." *Waddell III*, 2011 WL 767836, at *3. The KCOA further concluded that the jury "would not have found him guilty of the aggravated criminal sodomy, criminal threat, and two of the three aggravated indecent liberties counts" had J.M.J.'s videotaped statements not been shown to it. *Id*. The KCOA thus vacated Waddell's sentences for these convictions. *Id*. at *6. But the KCOA noted that Waddell's other convictions remained unaffected by this appeal. *Id*. at *7. And because these convictions were sufficient to result in a 330-month sentence, the KCOA did not vacate Waddell's controlling, 330-month sentence. *Id*.; *see also supra* n.3.

The KCOA granted Waddell all the relief available for this claim—i.e., vacating Waddell's sentences for the convictions that would not have resulted but for J.M.J.'s videotaped statements being shown to the jury. This Court can provide no additional relief. Accordingly, the Court denies this claim. *See Stratmoen v. Ward*, 248 F. App'x 17, 20 (10th Cir. 2007).[7]

---

[7]   To the extent Waddell is arguing that this issue impacts his four remaining convictions, the Court finds that relief is not available. Waddell makes no specific argument as to how the video impacts the remaining convictions in the

**B.**      **Waddell's claims regarding jury instructions at his second trial are barred by anticipatory procedural default**

**1.**      **Unanimity Instruction**

Waddell next claims that the trial court "erred in failing to give a unanimity instruction." Doc. 1 at 13. Waddell attaches a copy of the expert report prepared for the evidentiary hearing on his K.S.A. 60-1507 petition as support. The State argues that Waddell has procedurally defaulted on this claim because he did not raise the issue on appeal or in his K.S.A. 60-1507 petition.

The Court agrees that this claim is procedurally defaulted and that review is barred. Waddell did not raise a unanimity-instruction issue on his second direct appeal (*Waddell II*) and instead raised it for the first time in his K.S.A. 60-1507 petition.[8] *See State v. Donaldson*, 355 P.3d 689, 694 (Kan. 2015) (stating that a K.S.A. 60-1507 petition "is not typically an acceptable vehicle for a nonconstitutional claim of error that could have been addressed on a direct appeal."). Nonetheless, the district court addressed this issue on the merits in resolving his K.S.A. 60-1507 petition and found that Waddell's argument was conclusory and unsupported by the record. *See* Doc. 14-2 at 550-52.

Waddell could have exhausted this claim by appealing the district court's ruling on this issue to the KCOA. But, for reasons that are unclear, Waddell did not present this claim to the KCOA in his appeal (*Waddell V*). *See* Doc. 14-9; *see also Holt v. State*, 232 P.3d 848, 851-52 (Kan. 2010) (holding that issues raised in K.S.A. 60-1507 petition but not briefed or challenged on appeal are deemed waived or abandoned). Waddell has thus failed to give the state courts a full

---

instant briefing. And he expressly limited his argument in *Waddell III* to the four convictions for which the KCOA granted relief. *See supra* at 9-10.

[8]   Technically, Waddell raised the unanimity argument on his first direct appeal (*Waddell I*). However, the KCOA reversed and remanded for a new trial on other grounds. Accordingly, any error regarding the unanimity instruction in his first trial became moot. Waddell did not raise the unanimity-instruction issue on his second direct appeal.

opportunity to address this claim. Accordingly, Waddell has not met the requirement that he exhaust this claim before the state courts. And because Waddell cannot return to the state courts to present this claim in a timely manner, it is procedurally defaulted. *See Grey v. Meyer*, 2021 WL 3602589, at *5 (D. Kan. 2021).

As in the case of other procedurally defaulted claims, claims barred by anticipatory procedural default cannot be considered in federal court unless the prisoner establishes cause and prejudice for his default of state court remedies or a fundamental miscarriage of justice. *Id*. at *3. Waddell has offered no explanation excusing his procedural default. Waddell does not demonstrate cause because he does not identify any external factors that prevented him from raising this claim. And he does not demonstrate a fundamental miscarriage of justice because he does not provide new reliable evidence of actual innocence.

The Court thus concludes that Waddell's claim that the trial court erred in failing to give a unanimity instruction is procedurally defaulted and review is barred. Even if this ground was not procedurally defaulted, it cannot serve as a basis for federal habeas relief because it does not allege deprivation of a right under the United States Constitution. *See Adams v. Shelton*, 2018 WL 1305423, at *14 (D. Kan. 2018).

### 2. Presumption of Intent and Reasonable Doubt Instructions

Waddell also claims that the trial court erred "in giving the presumption of intent instruction in violation of K.S.A. 60-415," and in giving a "misleading reasonable doubt instruction." Doc. 1 at 13. These claims are also procedurally defaulted, and review is barred. Waddell did not raise either of these claims on his second direct appeal (*Waddell II*) and instead raised them for the first time in his K.S.A. 60-1507 petition. But, after consultation with Waddell's expert, Waddell's counsel abandoned these claims at the end of the evidentiary hearing. *See* Doc.

14-2 at 541 (conceding in a brief filed by Waddell's counsel that these issues did "not appear to merit consideration" by the district court). Thus, Waddell did not present these claims to the district court or to the KCOA in his appeal (*Waddell V*). *See* Doc. 14-9.

Accordingly, Waddell has not met the requirement that he exhaust these claims before the state courts. Because Waddell cannot return to the state courts to present these claims in a timely manner, they are procedurally defaulted. And Waddell has offered no explanation excusing his procedural defaults. He thus fails to establish a fundamental miscarriage of justice or cause and prejudice for failing to raise the claims to the KCOA.

The Court thus concludes Waddell's claims that the trial court erred in failing to give a unanimity instruction and in giving a misleading reasonable doubt instruction are procedurally defaulted and review is barred. Even if these grounds were not procedurally defaulted, they cannot serve as a basis for federal habeas relief because they do not allege deprivation of a right under the United States Constitution.

### C. Waddell's claim that there was insufficient evidence of a second rape occurring on a different date than alleged in the first count of rape is barred by anticipatory procedural default

Waddell's next claim is there was "insufficient evidence of a second rape occurring on a different date than alleged in 1st count of rape." Doc. 1 at 13. Waddell did not raise this claim on his second direct appeal (*Waddell II*), and instead raised it for the first time in his K.S.A. 60-1507 petition. But Waddell's counsel abandoned this claim at the end of the evidentiary hearing, and Waddell did not present the issue to the district court or to the KCOA on appeal. This claim is thus unexhausted. Because Waddell cannot return to the state courts to present this claim in a timely manner, it is procedurally defaulted and review is barred. And Waddell has offered no explanation excusing his procedural default, and thus fails to establish cause and prejudice for failing to raise

the claims to the KCOA or a fundamental miscarriage of justice. Even if this ground was not procedurally defaulted, it cannot serve as a basis for federal habeas relief because it does not allege deprivation of a right under the United States Constitution.

### D.    Ineffective Assistance of Counsel

Waddell next claims that he received ineffective assistance of counsel. Doc. 1 at 13, 31. The Court begins with Waddell's claims of ineffective assistance of appellate counsel.

### 1.    Waddell's claims that he received ineffective assistance of appellate counsel are barred by anticipatory procedural default

In his K.S.A. 60-1507 petition, Waddell claimed that he received ineffective assistance of appellate counsel because appellate counsel failed to raise the following issues on his second direct appeal: (1) the trial court erred in failing to give a unanimity instruction; (2) there was insufficient evidence of a second rape occurring on a different date than alleged in the first count of rape; (3) the trial court erred in giving the presumption of intent instruction in violation of K.S.A. 60-415; and (4) the trial court gave a misleading reasonable doubt instruction that lowered the State's burden of proof. Waddell's counsel abandoned this claim with respect to issues 2-4 at the conclusion of the evidentiary hearing. *See* Doc. 14-2 at 541. The district court only addressed whether Waddell received ineffective assistance of appellate counsel by failing to raise issue 1, and it concluded that Waddell failed to establish his appellate counsel was ineffective.

But Waddell did not appeal this ruling to the KCOA because his arguments on appeal were limited to errors committed by Waddell's trial counsel. *See generally* Doc. 14-9; *Waddell V*, 2020 WL 2502200, at *6-10. Waddell's claims of ineffective assistance of appellate counsel are therefore unexhausted. Because Waddell cannot return to the state courts to present these claims in a timely manner, they are procedurally defaulted and review is barred. And Waddell has offered

no explanation excusing his procedural default, and thus fails to establish a fundamental miscarriage of justice or cause and prejudice for failing to raise the claims to the KCOA.

> **2. The KCOA reasonably applied *Strickland v. Washington* when it adjudicated Waddell's claims of ineffective assistance of trial counsel.**

In his K.S.A. 60-1507 petition, Waddell also claimed that he received ineffective assistance of trial counsel for numerous reasons. *See supra* Section I.E.1, Issues 6-7. Waddell abandoned some claims after the evidentiary hearing. The district court addressed the remaining claims of ineffective assistance of trial counsel on the merits. The district court held that Waddell failed to meet his burden of proving deficient performance or prejudice. Doc. 14-2 at 557.

On appeal Waddell specifically argued six instances of <u>trial</u> counsel's ineffective assistance:

1. Trial counsel was constitutionally ineffective because he failed to object to introduction of sex-toy evidence.

2. Trial counsel was constitutionally ineffective because he failed to object to references to Waddell's extensive pornography magazine collection.

3. Trial counsel was constitutionally ineffective because he failed to object to Detective Proehl's testimony about how he conducts child sexual abuse cases.

4. Trial counsel was constitutionally ineffective because he failed to consult with experts about Waddell's medical condition that allegedly prevented him from engaging in sexual intercourse.

5. Trial counsel was constitutionally ineffective because he failed to consult with experts to rebut Kvas's medical testimony.

6. Trial counsel was constitutionally ineffective because he failed to consult with experts about child interview techniques in cases of sexual assault and abuse.

Doc. 14-9 at 6-11. The Court finds that Waddell has properly exhausted these claims because the KCOA adjudicated them on the merits.[9]

---

[9]   Waddell did not argue on appeal that his trial counsel was ineffective for failing to object to the unanimity jury instruction, failing to object to the district court's denial of a jury instruction regarding impeachment evidence and

Thus, this Court must determine whether the KCOA's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975. After review, the Court finds the KCOA's decision was neither contrary to or an unreasonable application of clearly established law nor based on an unreasonable determination of the evidence.

Specifically, the KCOA correctly identified the clearly established federal law, which is the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Waddell V*, 2020 WL 2502200, at *8 (citing *Sola-Morales v. State*, 335 P.3d 1162 (Kan. 2014)).[10] This test requires a claimant to demonstrate that: (1) defense counsel's performance fell below an objective standard of reasonableness; and (2) the defendant suffered prejudice as a result. *Strickland*, 466 U.S. at 687. And the KCOA reasonably applied that law based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding. *Waddell V*, 2020 WL 2502200, at *8-10.

The KCOA first determined that trial counsel's failure to object was not unreasonable. The record showed that trial counsel reasonably considered the impact of Waddell's sex toys, pornography collection, and Detective Proehl's testimony, and made the strategic decision to not object. There was no avoiding at least some reference to the sex toys and pornography, particularly considering that Waddell made voluntary statements to police about this material and how he

---

inconsistent statements, or failing to obtain a final ruling from the district court on a motion in limine. Thus, these claims are procedurally defaulted, and review is barred.

[10]   *Sola-Morales* cites to *Strickland* and applies the same two-part test. 335 P.3d at 1169 (citing *Strickland*, 466 U.S. at 687); *see also Burdick v. Kline*, 2019 WL 357934, at *4-5 (D. Kan. 2019) (holding that KCOA correctly identified the governing federal rule for ineffective assistance of counsel when it quoted and applied the *Sola-Morales* test).

previously observed J.M.J. looking at it in his home. And trial counsel believed Detective Proehl's testimony that Waddell groomed J.M.J. for sexual abuse was detrimental to the State's theory. This is because the "evidence presented by all of the State's other witnesses painted a very different picture: that [J.M.J.] reported a single horrifically violent assault." *Id.* at *9. Moreover, Detective Proehl admitted that he did not find any biological evidence in his search, which was "a fact that defense counsel specifically focused on and highlighted all throughout the trial." *Id.*

The KCOA thus found that trial counsel reasonably weighed this evidence and presented a logical and cohesive version of events that possibly could create reasonable doubt in the State's case. "Trial counsel consistently highlighted the State's inconsistent evidence with various witnesses throughout trial and ultimately used his closing arguments to make a strong plea that the State presented no actual evidence to convict Waddell." *Id.* at *10. The KCOA found that while trial counsel's strategy was unorthodox and ultimately unsuccessful, his performance was not deficient. Thus, the KCOA held it was not unreasonable for trial counsel to make the strategic decision not to object to this evidence and testimony. *Id.* at *8, 10. This conclusion is reasonable.

The KCOA also considered the remaining issues related to trial counsel's failure to consult various experts. The KCOA found that Waddell failed to meet his burden to show that trial counsel's performance was deficient. It found that Waddell made no showing that trial counsel failed to investigate these claims or consult with experts, let alone that he was deficient by any such failure. Indeed, the KCOA noted that both Waddell and his expert testified at the evidentiary hearing that they were unsure if trial counsel ever consulted with various experts or investigated the various claims certain State witnesses made at trial. *See, e.g.*, Doc. 14-2 at 701-02 (speculative testimony from Waddell's expert). The KCOA thus concluded that Waddell's ineffective assistance claims as to these points were speculative at best. And even if Waddell could show that

trial counsel's performance was deficient, he made no specific argument on appeal as to how the alleged deficiencies prejudiced his right to a fair trial. *Id*. at *10. Again, these conclusions are reasonable.

In sum, the KCOA denied these claims on the merits. The Court thus reviews them through the deferential lens of the AEDPA. The Court finds that the KCOA's resolution of Waddell's ineffective assistance claims was in accord with *Strickland* and that Waddell has not shown the decision was based on an unreasonable determination of the facts. Thus, to the extent this claim has been properly exhausted, the Court denies it because Waddell fails to satisfy 28 U.S.C. § 2254(d)(1) or (d)(2). And any claims of ineffective assistance of trial counsel that were not properly exhausted are procedurally defaulted and review is barred.

### E.      The Court dismisses Waddell's claim that the state district court erred in denying his state habeas petition

Waddell states in his final ground: "Did the District Court err in denying Mr. Waddell's petition pursuant to K.S.A. 60-1507?" Doc. 1 at 38. Waddell cites and attaches his appellate brief from *Waddell V* and claims that the denial of his K.S.A. 60-1507 petition violated his "U.S. Constitutional and Due Process Rights." *Id*. It appears that Waddell is bringing a new claim relating to Waddell's treatment during the state habeas proceedings.

A claim that focuses only on a state's post-conviction remedy and not the judgment that provides the basis for incarceration is not a proper claim for federal habeas relief. *See, e.g.*, *Leatherwood v. Braggs*, 829 F. App'x 363, 367 (10th Cir. 2020) (holding that petitioner's claim "that the Oklahoma courts violated his due-process rights when they rejected his postconviction claims as barred by res judicata without adequately considering his new evidence" was "not a proper claim for federal habeas relief"); *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[B]ecause the constitutional error [the petitioner] raises focuses only on the State's post-

conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."). Accordingly, Waddell's final ground fails to state a cognizable federal habeas relief claim.

### F.    Certificate of Appealability

The rules governing 28 U.S.C. § 2254 petitions require a district court to issue or deny a certificate of appealability when entering an order adverse to the petitioner. *See* Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A district court will issue a certificate of appealability only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, the petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citation omitted). For the reasons stated above, the Court finds that Waddell has not made a substantial showing of the denial of a constitutional right and, therefore, declines to issue a certificate of appealability.

## IV.   CONCLUSION

The Court carefully considered Waddell's petition, arguments, and the voluminous record. The Court finds that his claims do not merit relief.

THE COURT THEREFORE ORDERS that Waddell's Petition for Writ of Habeas Corpus (Doc. 1) is DENIED.

THE COURT FURTHER ORDERS that a certificate of appealability is NOT ISSUED.

IT IS SO ORDERED.

Dated: January 28, 2022                    /s/ *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE